DEDEAUX ET AL. *v.* BAYOU DELISLE LUMBER CO. ET AL.

[73 South. 53.]

1. ADVERSE POSSESSION. *Sufficency of evidence. Color of title. Possession and occupation. Actual possession. Burden of proof.*

   On a bill to confirm title and to cancel defendant's claims, the court held that the evidence set out in the opinion of the court did not establish that defendant entered the land under color of title.

2. ADVERSE POSSESSION. *Possession and occupation.*

   Where a party has no color of title to land, he can only acquire title by adverse possession to such part of the land as he has actually held in possession and inclosed, or otherwise actually and continuously occupied, for the statutory period of ten years.

3. SAME.

   Where a party occasionally went upon the land, and cut timber thereon and at other intervals burnt some coal kilns on the land but this occupation of the land was not continuous and hostile, nor for a period of ten years, such occupancy falls short of conferring title by adverse possession.

4. ADVERSE POSSESSION. *Burden of proof.*

   Where on a bill to confirm title and cancel defendant's claims, the defendant admitted the validity of plaintiff's paper title, but claimed title by adverse possession, the burden of establishing his title by adverse possession is on him.

APPEAL from the chancery court of Harrison county. HON. J. M. STEVENS, Chancellor.

Bill by O. J. Dedeaux and others against the Bayou Delisle Lumber Company and others. From a decree for defendants dismissing the bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Gex & Waller* and *O. J. Dedeaux,* for appellants.

We want to call the court's attention, in discussing the question of adverse possession, to the fact that the complainant introduced no witnesses except a surveyor because its title was perfect of record. The respondents

are the only ones who introduced any testimony at all, and as that does not establish, even by the wildest stretch of the imagination, any sort of possession, we introduced nothing in rebuttal, there being nothing to rebut, so that we are presenting this case solely and simply upon the testimony of the respondent. In connection with their adverse possession, we submit that the only acts of ownership claimed to have been exercised by these parties were such acts as cutting timber now and then, and burning coal kilns at long, separate intervals on lands which the record shows were susceptible of occupancy, in fact good farm lands. See testimony of Drake, the only witness for complainant.

That such acts are not sufficient to establish adverse possession of land has been so often passed upon by this court, it is hardly necessary for us to refer this court to any authority, however, though abundant caution, we respectfully refer the court to the following cases: *McGehee* v. *McGehee,* 37 Miss. 151; *Kennedy* v. *Sanders,* 90 Miss. 542; *Huntington* v. *Allen,* 44 Miss. 668; *Cohen* v. *Smith,* 94 Miss. 517; *Stephens Lbr. Co.* v. *Hughes,* 38 So. 769; *Leavenworth* v. *Reeves,* 64 So. 660.

*Mize & Mize,* for appellee.

If there ever was a case in which a right decision was reached, this is one. Appellees and those under whom they claim have been in actual and undisputed possession of this tract of land known as the Chevalier Dedeaux claim since the years 1877 and 1880, at all times claiming it as theirs, mortgaging it, having it assessed to them, paying taxes on it, leasing it, cutting the timber off it for saw mill purposes until it is practically denuded, burning charcoal on it, and never hearing a single protest against any of their acts until this suit was filed in the year 1913.

Appellants have nearly all lived right close to this land, some of them and their ancestors have lived all their lives within a mile and a half or so of this land,

and from 1877, or rather from 1859 and even farther back, have never attempted to assert any claim whatever to this tract, the deed from A. S. Durnee to McCaughan made in 1859 stating that he was selling to McCaughan all the land that was confirmed by the United States to Chevalier Dedeaux except fifty acres south of section 36 reserved by said Chevalier Dedeaux, and the deed from said McCaughan to John Huddleston to his land stated that he was selling to Huddleston all the land confirmed by the United States to said Chevalier Dedeaux except the fifty acres south of section 36 reserved by said Chevalier Dedeaux and the deed from Durnee to McCaughan referred back to another deed prior to 1859 whereby said land was conveyed by Chevalier Dedeaux to Durnee. These deeds to McCaughan and Huddleston were of record, and not one protest or claim was ever made by any of the Chevalier Dedeaux heirs at that time. The land comes on down and is assessed to Huddleston and sold for taxes and bought by W. S. Keel at tax sales and from the state in 1877 and 1880 respectively, and not one claim do we hear from any of the Dedeaux heirs until 1913. So here the appellees and those under whom they claim have paid money for this land and used it and claimed it as theirs from 1877 and 1880 to the present time; it has always been considered as theirs, they paid all the taxes on it; practically denuded it of timber, mortgaged it at various times, leased it, used it as theirs in every way; and not one cent of taxes was ever paid by appellants nor one claim or protest made by them during all those years until in 1913, when they attempt to get the land from appellees by asserting that appellees are not entitled to it on the ground that sections 25 and 36 are fractional sections.

We respectfully submit that the chancellor had overwhelming testimony on which to found his decree that the appellees had been in possession of this particular tract for more than ten years, and that the case of *McCaughan* v. *Young,* 85 Miss. 277, settles this question,

that their possession has been open, notorious, actual and adverse and such possession as the land was capable of having exercised over it, notwithstanding that two witnesses for appellants testified that it was farming land, and the witnesses for appellees said it was not. Notwithstanding this, the chancellor found that appellees had been in possession of it.

We respectfully submit that this case should certainly be affirmed.

Holden, J., delivered the opinion of the court.

The appellants, O. J. Dedeaux et al., filed their bill in the chancery court of Harrison county, seeking to confirm their title, and to cancel appellees' claim, to certain land described as section 38, township 7, and section 7, township 8, all in range 13, west, St. Stephens meridian, Harrison county, Miss.; and from a decree denying the relief and dismissing the bill, this appeal is taken here.

The undisputed facts, briefly stated, according to this record, are that more than a century ago the land known as section 38, here involved, was granted by the Spanish government to Chevalier Dedeaux, through whom the appellants now claim. The Chevalier Dedeaux moved upon the land, established his residence there, reared his family, and died and was buried there. The old landmarks, the place of his home where he died, as well as his grave, are yet distinguishable, and stand as silent monuments to the memory of this deceased pioneer. Afterwards, his title to the land was confirmed by the United States government, and the appellants here have an unbroken chain of title to it from this ancestor. This proof of a clear title in the appellants having been made before the chancellor, the defendants in the court below conceded the validity of the title in Chevalier Dedeaux, but claimed that they have title to the land by adverse possession; and upon this issue the case was tried out by the lower court.

As proof of title by adverse possession, the appellees introduced two tax deeds made by the tax collector of Harrison county, dated January 1, 1877, and March 3, 1879, which deeds convey to W. S. Keel, through whom appellees claim, "the west one-half fractional sec. 25," and the "west one-half fractional sec. 36," which described land appears to lie immediately east of section 38, the land involved in this lawsuit. The appellees show further that they exercised ownership over section 38 by cutting timber off of it occasionally at different times between 1880 and 1887, and that appellees burned coal kilns on the land occasionally at separate intervals during a long period. It is also disclosed from the testimony that, at different times, a shanty or two were built, either on section 38 or on fractional sections 25 and 36, by appellees. The land was suitable for cultivation, but was not cultivated.

It clearly appears to us from this record that the appellees failed to establish any color of title to section 38, the land here in controversy. Nowhere in this record does it appear that the appellees had ever claimed any paper title to section 38, but their title, as evidenced by the tax collector's deeds and the tax receipts, was the title to the west one-half of fractional section 25, and west one-half of fractional section 36, but there is no claim of paper title to section 38. And while the tax deeds appear to include three hundred and twenty acres of land in sections 25 and 36, yet there is nothing in this record to show that this three hundred and twenty acres was intended to be located anywhere outside of sections 25 and 36. Therefore the proof fails to show that the appellees entered the land (section 38) under color of title. The appellees, having no color of title to section 38, could only acquire title by adverse possession to such part of the land as was actually held in possession and inclosed, or otherwise actually and continuously occupied, for the statutory period of ten years.

The evidence in this case shows that the appellees occasionally went upon section 38, and cut certain timber thereon, and at other intervals burnt some coal kilns on the land, but it seems from all of the testimony that this occupation of the land, if it can be said to be an occupation, was not continuous and hostile, nor was it for a period of ten years; and we think that the most that can be said of the claim of adverse possession is that it was continuous only for a period of about seven years, thus falling far short of the statutory requirement of "ten years' actual adverse possession, . . . claiming to be the owner for that time."

In view of these conclusions, we do not think that the defendants in the court below met the burden of proof required in establishing their title to the land by adverse possession, and we hold that the title to section 38 here involved remains in the appellants as heirs of the Chevalier Dedeaux.

The decree of the lower court is reversed, and decree entered here for appellants.

*Reversed.*